HSP

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MS. RACHEL SCHAAR, | : |
|            Plaintiff | : CIVIL ACTION NO. |
| vs. | : 07-04135 |
| LEHIGH VALLEY HEALTH SERVICES, INC. and LEHIGH VALLEY PHYSICIANS BUSINESS SERVICES, INC. | : |
|            Defendants | : |

FILED
FEB - 9 2009
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### ORDER

**AND NOW**, this 9th day of February, 2009, upon consideration of Plaintiff's Motion for Summary Judgment (Dkt. No. 40) filed December 15, 2008, Defendants' response, and Plaintiff's reply thereto; upon consideration of Defendants' Motion for Summary Judgment (Dkt. No. 41), Plaintiff's response, and Defendants' reply thereto; and for the reasons expressed in the foregoing Memorandum, **IT IS HEREBY ORDERED** as follows:

    1.  Plaintiff's Motion for Summary Judgment (Dkt. No. 40) is **DENIED**.

    2.  Defendants' Motion for Summary Judgment (Dkt. No. 41) is **GRANTED**.

    3.  All remaining motions, including Defendants' Motion in Limine to Preclude Testimony Regarding a Co-worker's Alleged Failure to Schedule a Medical Test in an Expedited Manner (Dkt. No. 42), are **DENIED** as moot.

2-9-09 emailed to: D. Deraterian
A. Johnston
D. Crusy
G. Gvanavsky

4. The Clerk of Court shall mark this case **CLOSED** for statistical purposes.

BY THE COURT:

_____
HENRY S. PERKIN,
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MS. RACHEL SCHAAR, : <br> : <br> Plaintiff : <br> : <br> vs. : <br> : <br> LEHIGH VALLEY HEALTH SERVICES, INC. : <br> and LEHIGH VALLEY PHYSICIANS : <br> BUSINESS SERVICES, INC. : <br> : <br> Defendants : <br> : | CIVIL ACTION NO. <br><br> 07-04135 <br><br> FILED <br><br> FEB - 9 2009 <br><br> MICHAEL E. KUNZ, Clerk <br> by \_\_\_\_ Vly \_\_\_\_ Dep. Clerk |

HENRY S. PERKIN,
UNITED STATES MAGISTRATE JUDGE

February 9, 2009

### MEMORANDUM

In her Amended Complaint, Plaintiff, Rachael Schaar ("Schaar"), alleges that Defendants, Lehigh Valley Health Services, Inc. and Lehigh Valley Physicians (collectively "Lehigh Valley") violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654 (1999), by refusing her medical leave for her serious medical condition and by terminating her employment. Presently before this Court are the parties' Cross-Motions for Summary Judgment.[1] For the reasons that follow, Plaintiff's Motion will be denied and Defendants' Motion will be granted.

---

[1] Schaar alleges that she is entitled to summary judgment on liability because of Lehigh Valley's willful violation of FMLA. In short, Schaar alleges that Lehigh Valley interfered with her rights under FMLA and impermissibly terminated her employment in retaliation for her exercising her FMLA right to take leave. In their motion, Lehigh Valley avers that Schaar is not protected by FMLA, and that, in the alternative, even if she is protected, they had legitimate, non-discriminatory reasons for terminating Schaar.

## Facts

Based upon the record papers, exhibits, depositions, and the parties' statements of the facts, the pertinent facts to this Court's determination are as follows:

Schaar worked for Lehigh Valley as a medical receptionist from December of 2002 until she was discharged on October 3, 2005. On Wednesday, September 21, 2005, before the start of her noon shift, Schaar sought treatment from Dr. Hugo Twaddle.[2] Schaar complained of low back pain, fever, nausea and vomiting. According to the medical records, Dr. Twaddle noted Schaar's demeanor as "comfortable and nontoxic" and a urinalysis indicated that she was suffering from a bladder infection. Dr. Twaddle diagnosed Schaar with a urinary tract infection,[3] fever and accompanying low back pain.

Dr. Twaddle advised Schaar to stay on a clear diet and prescribed an anti-inflammatory for the back discomfort as well as an antibiotic for the infection. The antibiotic was to be taken once a day, over a period of at least three days. During his deposition, Dr. Twaddle stated that, after a day or two, the

---

[2] Lehigh Valley also employed Hugo Twaddle, M.D., who is Board Certified in internal medicine. Although Dr. Twaddle and Schaar were co-employees, no supervisory relationship existed between them.

[3] Although Schaar claimed at one point that Dr. Twaddle told her that she suffered from a kidney infection, Dr. Twaddle denies ever diagnosing Schaar with a kidney infection.

antibiotic should have lowered her fever and caused her symptoms to disappear.

Schaar asked Dr. Twaddle for a note advising the office manager[4] that this illness prevented her from working Wednesday and Thursday, September 21 and 22, 2005, respectively. Dr. Twaddle obliged and authored a note on September 21, 2005 stating that Schaar was under his care "for febrile illness and will be unable to perform duties at work today or tomorrow." Dr. Twaddle instructed Schaar to tape the medical excuse note to the office manager's door if she was not available. Dr. Twaddle also told Schaar that he would speak to the office manager when she came in. Schaar taped Dr. Twaddle's note on the office manager's door and went home. She took paid sick days on Wednesday and Thursday, September 21 and 22, 2005. Both days she spent in bed with pain, fever and vomiting. Schaar did not seek any further treatment with Dr. Twaddle.

A couple of months beforehand, Schaar had scheduled Friday, September 23, 2005, and the following Monday, September 26, 2005, as vacation days. Schaar alleges that she continued vomiting, and was still nauseous on Friday, September 23, 2005 and, as a result, spent most of the day in bed. Although Schaar felt somewhat improved by Saturday, September 24, 2005, she was still not well enough to get out of bed. By Sunday, September

---

[4] As a medical receptionist, Schaar reported to the office manager.

25, 2005, she was still feeling ill, but managed to get out of bed and lay on the couch. On Monday, September 26, 2005, Schaar felt well enough to get up and wash dishes, and do some laundry.

Schaar returned to work on Tuesday, September 27, 2005. After returning to work on September 27, 2005, Schaar never told anyone at Lehigh Valley that she wanted her four-day absence designated as FMLA leave. Nor did she ask to convert her two vacation days into two sick days. On October 3, 2005, Schaar's employment with Lehigh Valley was terminated.

## Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the

non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

## Discussion

The twofold purpose of the Family Medical Leave Act is to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons. . . ." 29 U.S.C. § 2601(b)(1) and (2). To further these objectives, FMLA instructs that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

For leave to have been covered by the FMLA, therefore, a plaintiff must establish that she was an eligible employee under the FMLA, that her employer was an employer subject to the FMLA, and that either the employee or an immediate family member suffered from a serious health condition. Yansick v. Temple University Health System, Civ. A. No. 04-4228, 2006 U.S. Dist. LEXIS 53789, at *39 (E.D. Pa. July 27, 2006)(Joyner, J.)(citing 29 U.S.C. § 2612(a)(1)). In this case, the parties do not dispute that Schaar was an eligible employee and that Lehigh Valley was an employer subject to the FMLA. Lehigh Valley does argue, however, that Schaar did not suffer from a serious health condition.

A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves

6

-- (A) inpatient care . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). In this case, Schaar does not claim that she underwent any inpatient care so this Court's determination is limited to the question of whether her treatment for a urinary tract infection involved "continuing treatment by a health care provider."[5]

The regulations promulgated by the Department of Labor set forth the test for determining whether "continuing treatment" exists. See 29 C.F.R. § 825.114(a)(2). More specifically, 29 C.F.R. § 825.114(a)(2) states, in pertinent part, as follows:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment,

---

[5] We note generally that a plaintiff may demonstrate, in the alternative, that she suffered from a chronic serious health condition. With respect to a chronic serious health condition, the regulations provide as follows:

> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2)(iii).

In this case, we find no evidence of, nor does Schaar suggest, that she suffered from a chronic serious health condition. Therefore, we will limit our analysis to whether Schaar suffered from a "period of incapacity . . . of more than three consecutive calendar days" under 29 C.F.R. § 825.114(a)(2)(i).

> or physical or mental condition that involves:
>
> . . .
>
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.[6]

29 C.F.R. § 825.114(a)(2)(i).

Under the regulations, therefore, Schaar must show that (1) she suffered "a period of incapacity of more than three consecutive calendar days;" and (2) she received continued,

---

[6] A regimen of treatment includes a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave. 29 C.F.R. § 825.114(b).

8

supervised treatment relating to the same condition. <u>McCoy v. Port Liberte Condominium Assoc. # 1, Inc.</u>, Civ. A. No. 02-1313, 2003 U.S. Dist. LEXIS 26462, at *14-18 (D.N.J. Sept. 12, 2003)(citations omitted).

On Wednesday, September 21, 2005, Schaar treated with Dr. Twaddle who diagnosed her with a urinary tract infection, fever and accompanying low back pain. Dr. Twaddle advised Schaar to stay on a clear diet and prescribed an anti-inflammatory for the back discomfort as well as an antibiotic for the infection. Dr. Twaddle also authored a note on September 21, 2005 stating that Schaar was under his care "for febrile illness and will be unable to perform duties at work today or tomorrow." This note, which covers only two days, September 21 and September 22, is insufficient to demonstrate a "serious health condition" under the FMLA, which requires a period of incapacity of three or more days. <u>Yansick</u>, 2006 U.S. Dist. LEXIS 53789, at *53 (a doctor's note covering only two days is insufficient to show a "serious health condition" under § 825.114(a)(2)(i), which requires a period of incapacity of three or more days).

Schaar claims, however, that she "was incapacitated for a period of five days under the continuing care of a physician" and, as a result, meets the threshold requirement of "more than three days" under the regulations. Lehigh Valley, however, asserts that the only evidence of Schaar's incapacity beyond two

9

days are her own assertions that she was unable to work or perform daily activities. Lehigh Valley contends, therefore, that Schaar has not met the threshold because only a health care provider can make the determination of incapacity and Schaar's testimony regarding her own medical condition is irrelevant.

Courts in this district have determined that

> [a] plaintiff's assertion that he or she suffered from a serious health condition must be supported by evidence from a health care provider that the claimed condition, in that provider's professional medical opinion, actually prevented the plaintiff from working.[FN1]
>
>> [FN1] This inquiry is separate from the issue of medical certification. Here, we do not examine the employer's procedures or obligations with regards to obtaining medical certification for a condition. See 29 C.F.R § 825.305(a). Rather, we must determine whether any medical evidence shows that, at the time of Plaintiff's absence, the specified condition actually prevented him from working.
>
> Brown v. Seven Seventeen HB Phila. Corp. No. 2, Civ. A. No. 01-1741, 2002 U.S. Dist. LEXIS 15066, 10-11 (E.D. Pa. August 8, 2002) (internal citations omitted). It is not enough that, "in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work."[FN2]
>
>> [FN2] Although the Third Circuit has not explicitly spoken on this issue, the majority of appellate courts have found that a plaintiff's own statement of incapacity is insufficient to support his or her eligibility for FMLA benefits. See McCoy v. Port Liberte

>Condominium Assoc. # 1, Inc., Civ. A. No. 02-1313, 2003 U.S. Dist. LEXIS 26462, *14-18 (D.N.J. Sept. 12, 2003) (providing a thorough discussion of opinions of circuits that have decided this question).
>
>Id. (citing Olsen v. Ohio Edison Co., 979 F. Supp. 1159, 1166 (N.D. Ohio 1997)). Generally, "a health care provider must instruct, recommend, or at least authorize an employee not to work for at least four consecutive days for that employee to be considered incapacitated." Id. (citing Bond v. Abbott Laboratories, 7 F. Supp. 2d 967, 974 (N.D. Ohio 1998)).

Yansick, 2006 U.S. Dist. LEXIS 53789, at *42-44 (citing Brown v. Seven Seventeen HB Phila. Corp. No. 2, Civ. A. No. 01-1741, 2002 U.S. Dist. LEXIS 15066, at *10-11 (E.D. Pa. August 8, 2002) (Tucker, J.).

In this matter, Schaar tries to overcome the "more than three days" period of incapacity threshold by arguing that Dr. Twaddle admitted that there was no medical reason to disbelieve her assertion that she suffered from a fever and pain for longer than three days. Schaar also points out that Dr. Twaddle conceded that it was possible that a person with a urinary tract infection with complications may not be fully recovered enough to resume work after three days. Dr. Twaddle's testimony, as a whole, however, does not support Schaar's assertion. In fact,

Dr. Twaddle actually testified as follows:

> Q.: Is there a normal course for the recovery from a urinary tract infection?
>
> A.: Yes.
>
> Q.: What's the normal course?
>
> A.: A urinary tract infection without complications, a day or two it would clear up.
>
> Q.: Do you consider this to be a urinary tract infection without complication?
>
> A.: The fever is the main concern with the urinary infection. Usually when women have an uncomplicated urinary infection they don't have a fever.
>
> Q.: So does that make this a urinary tract infection with complications?
>
> A.: Yes.
>
> Q.: In your experience with a urinary tract infection with complications, would it be inconceivable - - I know that's not a medical term, that the person would not have fully recovered after two days?
>
> A.: It's possible, yes, although it's doubtful. Other than the fever and the urinary infection [Schaar] was healthy.
>
> Q.: Okay. Is it inconceivable that the person would not be fully recovered enough to come back to work after three days?
>
> A.: It's possible, although very unlikely.
>
> . . .
>
> Q.: Okay. If [Schaar] were to say - - if [Schaar] were to tell you, let's say on the following Monday, that she continued to have fever and pain throughout the weekend, would

12

> you have any medical reason to disbelieve that statement?
>
> A.: Well, no, if my patient tells me that they have fever, I believe them, yes.

See Defendants' Brief Exhibit L at 42-44 (objections omitted). Dr. Twaddle's testimony does not support Schaar's assertion that her incapacity lasted more than three days. To the contrary, Dr. Twaddle actually testified that, based on his treatment of Schaar, it was doubtful that she would not have been fully recovered after two days. We also find it significant that, despite her assertions that her incapacity continued for "more than three days, Schaar did not seek any additional treatment with Dr. Twaddle or any other physician.

Moreover, Dr. Twaddle's speculation that it was possible, albeit unlikely, that Schaar would not have been recovered enough to come back to work after three days is insufficient to prove that Schaar was actually unable to work, or that her absence was "due to" her illness. See Brannon v. Oshkosh B'Gosh, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (doctor's "speculation that it was reasonable for someone to miss three or four days for her type of illness" and employee's own testimony that she felt "too sick to work" was insufficient to support allegation of incapacitation).

Without a doctor's statement that she was incapacitated for more than three days after September 21, 2005, Schaar cannot

13

fulfill the first requirement of 29 C.F.R. § 825.114(a)(2)(i) as the courts in this district have interpreted it. Yansick, 2006 U.S. Dist. LEXIS 53789, at *42-43; Brown, 2002 U.S. Dist. LEXIS 15066, at *10-11, 13 (under FMLA, the only relevant opinion about whether an employee was able to work belongs to the employee's health care provider, not the employee or her supervisors). Because Schaar has failed to establish the requisite period of incapacity, it is unnecessary for this court to determine whether she received continued treatment for her condition. See McCoy, 2003 U.S. Dist. LEXIS 26462, *19 (citing Haefling v. United Parcel Service, Inc., 169 F.3d 494, 499 (7th Cir. 1999)(finding that whether a plaintiff can prove a period of incapacity requiring absence from work for more than three days is a threshold demonstration); Martyszenko v. Safeway, Inc., 120 F.3d 120, 122-23 (8th Cir. 1997)(FMLA requires a showing of incapacity); Cavin v. Honda of America Mfg., 2002 U.S. Dist. LEXIS 19601, No.C2-00-400, 2002 WL 484521 at *17 (S.D. Ohio Feb. 22, 2002) (same).

   An Order follows.