# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MS. RACHEL SCHAAR,

        Plaintiff

vs.

LEHIGH VALLEY HEALTH SERVICES, INC.
and LEHIGH VALLEY PHYSICIANS
BUSINESS SERVICES, INC.

        Defendants

CIVIL ACTION NO.

07-04135

HENRY S. PERKIN,                                August 4, 2010
UNITED STATES MAGISTRATE JUDGE

**MEMORANDUM**

In her Amended Complaint, Plaintiff, Rachael Schaar ("Schaar"), alleges that Defendants, Lehigh Valley Health Services, Inc. and Lehigh Valley Physicians (collectively "Lehigh Valley") violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654 (1999), by refusing her medical leave for her serious medical condition and by terminating her employment. Presently before this Court is the Defendants' renewed motion for summary judgment.[1] For the

---

[1] On February 9, 2009, the undersigned entered a Memorandum and Order denying Schaar's motion for summary judgment and granting Lehigh Valley's motion for summary judgment. Relying on cases in this district, the undersigned concluded that Schaar did not qualify for leave under the Family and Medical Leave Act because she failed to present medical evidence that she was incapacitated for more than three days. Schaar appealed this decision to the United States Court of Appeals for the Third Circuit.

On March 11, 2010, the Third Circuit, having considered this issue of first impression, determined that an employee may satisfy her burden of proving three days of incapacitation, one of the factors necessary to prove FMLA eligibility, through a combination of expert medical and lay testimony. Schaar v. Lehigh Valley Health Services, Inc., 598 F.3d 156, 161 (3d Cir.

reasons that follow, Defendants' motion will be denied.

## Facts

Based upon the record papers, exhibits, depositions, and the parties' statements of the facts, the pertinent facts to this Court's determination are as follows:

Schaar worked for Lehigh Valley as a medical receptionist from December of 2002 until she was discharged on October 3, 2005. On Wednesday, September 21, 2005, before the start of her noon shift, Schaar sought treatment from Dr. Hugo Twaddle.[2] Schaar complained of low back pain, fever, nausea and vomiting. According to the medical records, Dr. Twaddle noted Schaar's demeanor as "comfortable and nontoxic" and a urinalysis indicated that she was suffering from a bladder infection. Dr.

---

March 11, 2010). Applying this holding to the facts of this case, the Third Circuit concluded that a material issue of fact exists as to whether Schaar suffered from a "serious health condition." Id. Accordingly, the Third Circuit vacated the undersigned's February 9, 2009 Order and remanded this matter for further proceedings. Id.

As a result of the Third Circuit remand, certain issues raised by Lehigh Valley in their initial motion, which were not previously addressed by this Court, remain pending. In particular, Lehigh Valley continues to assert that Schaar did not provide requisite notice of her disputed "incapacity" and, as a result, was not eligible for FMLA leave. Lehigh Valley also asserts, in the alternative, that even if Schaar was eligible for FMLA leave, they had legitimate, non-discriminatory reasons for terminating her.

In addition to reviewing the initial briefs concerning Lehigh Valley's motion for summary judgment, this Court has also reviewed and considered Plaintiff's Supplemental Brief in Support of Her Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment filed April 22, 2010 and Defendants' Response in Opposition to Plaintiff's Supplemental Brief filed May 6, 2010.

[2] Lehigh Valley also employed Hugo Twaddle, M.D., who is Board Certified in internal medicine.

2

Twaddle diagnosed Schaar with a urinary tract infection,[3] fever and accompanying low back pain.

Dr. Twaddle advised Schaar to stay on a clear diet and prescribed an anti-inflammatory for the back discomfort as well as an antibiotic for the infection. The antibiotic was to be taken once a day, over a period of at least three days. During his deposition, Dr. Twaddle stated that, after a day or two, the antibiotic should have lowered her fever and caused her symptoms to disappear.

Schaar asked Dr. Twaddle for a note advising the office manager,[4] Patricia Chromczak, that this illness prevented her from working Wednesday and Thursday, September 21 and 22, 2005, respectively. Dr. Twaddle obliged and authored a note on September 21, 2005 stating that Schaar was under his care "for febrile illness and will be unable to perform duties at work today or tomorrow." Dr. Twaddle instructed Schaar to tape the medical excuse note to the Ms. Chromczak's door if she was not available. Dr. Twaddle also told Schaar that he would speak to the Ms. Chromczak when she came in. Schaar taped Dr. Twaddle's note on Ms. Chromczak's door and went home. She took paid sick days on Wednesday and Thursday, September 21 and 22, 2005. Both

---

[3] Although Schaar claimed at one point that Dr. Twaddle told her that she suffered from a kidney infection, Dr. Twaddle denies ever diagnosing Schaar with a kidney infection.

[4] As a medical receptionist, Schaar reported to the office manager.

3

days she spent in bed with pain, fever and vomiting. Schaar did not seek any further treatment with Dr. Twaddle.

A couple of months beforehand, Schaar had scheduled Friday, September 23, 2005, and the following Monday, September 26, 2005, as vacation days. Schaar alleges that she continued vomiting, and was still nauseous on Friday, September 23, 2005 and, as a result, spent most of the day in bed. Although Schaar felt somewhat improved by Saturday, September 24, 2005, she was still not well enough to get out of bed. By Sunday, September 25, 2005, she was still feeling ill, but managed to get out of bed and lay on the couch. On Monday, September 26, 2005, Schaar felt well enough to get up and wash dishes, and do some laundry.

Schaar returned to work on Tuesday, September 27, 2005. Ms. Chromczak asked Schaar how she was feeling and Schaar responded that she was sick all weekend and was still not feeling too good. At that point, Ms. Chromczak advised Schaar that she could be fired for no call/no show. Schaar responded by stating that she didn't realize she had to call since she was already physically present in the office and had presented an excuse by the doctor. Ms. Chromczak said she would check with human resources and get back to her. A few days later, Ms. Chromczak conceded that, according to Lehigh Valley human resources, she could not fire Schaar for her absence.

Although Schaar never specifically told anyone at

4

Lehigh Valley that she wanted her four-day absence designated as FMLA leave, she did testify that if someone had told her that FMLA leave was an option, she would have taken her absence as FMLA leave. On October 3, 2005, Schaar's employment with Lehigh Valley was terminated.

### Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot

rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

## **Discussion**

The twofold purpose of the Family Medical Leave Act is to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for

medical reasons. . . ." 29 U.S.C. § 2601(b)(1) and (2). To further these objectives, FMLA instructs that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employee returning from leave shall be restored to the same or equivalent position held by the employee when the leave started and shall retain all employment benefits accrued prior to the leave. 29 U.S.C. § 2614(a)(1)-(2).

Courts recognize two causes of action to redress an employer's violation of the FMLA. Under Section 2615(a)(1), the FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615 (a)(1). Section 2615(a)(2) makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The federal regulations interpret section 2615(a)(2) as providing a cause of action for employees who have been discriminated against in retaliation for taking FMLA leave. See 29 C.F.R. § 825.220(c).

**FMLA Eligibility**

As noted by the Third Circuit, for leave to have been

7

covered by the FMLA, Schaar must establish that she was an eligible employee under the FMLA, Lehigh Valley was an employer subject to the FMLA, and that she suffered from a serious health condition[5] and gave Lehigh Valley adequate notice of her need for FMLA leave. Schaar v. Lehigh Valley Health Services, Inc., 598 F.3d 156, 158-159 (3d Cir. March 11, 2010)(citing 29 U.S.C. §§

---

[5] A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves -- (A)inpatient care . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The regulations promulgated by the Department of Labor set forth the test for determining whether "continuing treatment" exists. See 29 C.F.R. § 825.114(a)(2). More specifically, 29 C.F.R. § 825.114(a)(2) states, in pertinent part, as follows:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> . . .
>
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i).

8

2611(2), 4(a)(i) and 2612(a)(1)(D), (e)(2)(B)). In this case, the parties do not dispute that Schaar was an eligible employee and that Lehigh Valley was an employer subject to the FMLA. Lehigh Valley does assert, however, that Schaar did not suffer from a serious health condition and she failed to provide sufficient notice of the condition.

With respect to the existence of a "serious health condition," the Third Circuit has already ruled that a material issue of fact exists which precludes summary judgment in favor of Lehigh Valley. More specifically, the Third Circuit stated that "[w]hen th[e] expert medical opinion [that Schaar was incapacitated for two days] is combined with Schaar's lay testimony that she was incapacitated for two additional days, it necessarily follows that a material issue of fact exists as to whether Schaar suffered from a 'serious health condition.'" Schaar, 598 F.3d at 161.

With respect to notice, the regulations and controlling case law provide guidance as to what sort of notice is sufficient to determine FMLA eligibility. As indicated by the Third Circuit,

> It is clear that an employee need not give his employer a formal written request for anticipated leave. Simple verbal notification is sufficient:
>
> > An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs

9

> FMLA-qualifying leave, and the
> anticipated timing and duration of the
> leave. The employee need not expressly
> assert rights under the FMLA or even
> mention the FMLA . . ..
>
> 29 C.F.R. § 825.302(c).
>
> . . .
>
> In providing notice, the employee need not
> use any magic words. The critical question is
> how the information conveyed to the employer
> is reasonably interpreted. An employee who
> does not cite to the FMLA or provide the
> exact dates or duration of the leave
> requested nonetheless may have provided his
> employer with reasonably adequate information
> under the circumstances to understand that
> the employee seeks leave under the FMLA. The
> Eighth Circuit Court of Appeals implicitly
> adopted this position when it stated that
> "[i]n order to benefit from the protections
> of the statute, an employee must provide his
> employer with enough information to show that
> he *may* need FMLA leave." . . . This approach
> to the notice requirement is a sensible one.

Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402-403 (3d Cir. 2007)(citation omitted).

We conclude that an issue of material fact exists as to whether Schaar gave sufficient notice to Lehigh Valley of her condition, thereby precluding summary judgment to Lehigh Valley on the issue of eligibility. Viewing the facts in the light most favorable to Schaar, Dr. Twaddle, who Schaar regarded as one of her supervisors, was aware of Schaar's condition (i.e. urinary tract infection with complications), authored a note on Schaar's behalf which he instructed her to place on Ms. Chromczak's door,

10

and advised Schaar that he would speak to Ms. Chromczak about her condition and resulting absence. When these details are combined with Schaar's report to Ms. Chromczak upon her return to work that she was sick all weekend, we find that the information as a whole is sufficient to create a material issue of fact as to whether Schaar provided reasonably adequate information to show that she *may* need FMLA leave. Sarnowski, 510 F.3d at 403.

Further, we note that if the employer is uncertain whether the leave qualifies under the FMLA it "should make a preliminary designation," notify the employee, and "request such additional information from the employee's doctor or other reputable source as may be necessary to confirm the employee's entitlement." 29 C.F.R. § 825.208(e)(2); see also Peter v. Lincoln Technical Inst., Inc., 255 F.Supp.2d 417, 441 (E.D. Pa. 2002)(holding that "the regulations are clear that once the employer determines that it requires more information to determine whether FMLA leave is being requested, the burden shifts to the employer to investigate further").

**FMLA Interference**

As indicated above, the FMLA provides protection for employees who are eligible for, or have taken, FMLA leave. See 29 U.S.C. § 2615; 29 C.F.R. § 825.208. It is illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. §

11

2615(a)(1); see Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 141-142 (3d Cir. 2004). "Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the" FMLA. 29 C.F.R. § 825.220(b). To establish a violation of this provision, an employee need only show that she was entitled to FMLA benefits, 29 U.S.C. § 2612(a)(1), and the employer interfered with them, 29 U.S.C. § 2614(a)(1).

Interference with an employee's rights includes an employer's failure to advise the employee of her rights under the FMLA. Conoshenti, 364 F.3d at 142-143. To prevail on an interference claim based on a failure to advise, the employee must show prejudice by "establish[ing] that this failure to advise rendered [her] unable to exercise that right in a meaningful way, thereby causing injury." Id. at 143-144. In Conoshenti, the Third Circuit reversed the grant of summary judgment in favor of the employer by stating as follows:

> Conoshenti argues that PSE&G's failure to advise him of his right to 12 weeks of FMLA leave, after he properly gave notice of his serious health condition, constituted an interference with his FMLA right to that protected leave. Had he received the advice PSE&G was obliged to provide, Conoshenti insists, he would have been able to make an informed decision about structuring his leave and would have structured it, and his plan of recovery, in such a way as to preserve the job protection afforded by the Act. We conclude that this is a viable theory of recovery and that the District Court

12

>           accordingly erred in granting summary
>           judgment on it against Conoshenti.
>
>           The parties stipulated in the District Court
>           that, for purposes of summary judgment, PSE&G
>           did not advise Conoshenti of his rights under
>           the FMLA. As we have also noted, the
>           regulation under the FMLA imposed a duty on
>           PSE&G to do so. It follows, we believe, that
>           Conoshenti will show an interference with his
>           right to leave under the FMLA, within the
>           meaning of 29 U.S.C. § 2615(a)(1), if he is
>           able to establish that this failure to advise
>           rendered him unable to exercise that right in
>           a meaningful way, thereby causing injury.

Conoshenti, 364 F.3d at 143.

Like the plaintiff in Conoshenti, Schaar alleges that she was not informed of her right to take FMLA leave in connection with her absence. Further, she testified that had she been informed that FMLA was an option for her absence, she would have taken her absence as FMLA leave. Based on Conoshenti and case law which follows,[6] this is sufficient to defeat Lehigh Valley's summary judgment motion on the FMLA interference claim.[7]

**FMLA Retaliation**

As with other claims of discrimination, retaliation claims under the FMLA are to be analyzed under the framework of McDonnell-Douglas Corp. v. Green's, 411 U.S. 792, 93 S. Ct. 1817.

---

[6] This Court has reviewed and considered Reid-Falcone v. Luzerne County Community College, 2005 U.S. Dist. LEXIS 12713 (M.D. Pa. June 28, 2005).

[7] Lehigh Valley's argument that an interference claim requires actual injury has been considered. However, based on our review of the reasons for termination, it is apparent that Schaar's absence was used as one of the reasons to terminate her.

13

See Conoshenti, 364 F.3d at 146; Peter v. Lincoln Technical Institute, 255 F.Supp.2d 417, 444-445 (E.D. Pa. 2002). This framework requires: (1) that Schaar establish a *prima facie* case of employment discrimination; (2) that Lehigh Valley proffer a nondiscriminatory reason for its adverse employment action; and (3) that Schaar must then show that Lehigh Valley's proffered explanations were pretextual." Peter, 255 F.Supp.2d at 445 (citing Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1065-1067 (3d Cir. 1996).

A *prima facie* case under 29 U.S.C. § 2615(a)(2) requires a showing that (1) Schaar is protected under the FMLA, (2) she suffered an adverse employment action, and (3) a causal connection exists between the adverse decision and Schaar's attempt to exercise her FMLA rights. Conoshenti, 364 F.3d at 146; Peter, 255 F.Supp.2d at 445.

We have already found that Schaar has presented sufficient evidence for a jury reasonably to find that her absence was eligible and that she was, as a result, protected under the FMLA. In addition, the parties do not dispute that termination is an adverse employment action. With respect to the final element, although Lehigh Valley disputes any causal connection, the discharge notice specifically lists one of the circumstances of termination as being her absence which, at this point, has been determined to be FMLA eligible. More

14

specifically, the discharge notice lists that "[o]n 9/21/05 [Schaar] brought a note from her doctor for a 2 day excuse from work. She taped note to manager's door and left never calling off from work."

Under the McDonnell-Douglas framework, Lehigh Valley's assertion that it terminated Schaar for poor work performance then requires Schaar to demonstrate that the proffered explanations are pretextual.[8] Based on our review of the record in the light most favorable to Schaar, there is sufficient evidence for a reasonable jury to conclude that Lehigh Valley's claimed reasons for terminating Schaar were merely pretextual.

Following Schaar's return to work on September 27, 2005, Ms. Chromczak, after briefly inquiring as to how Schaar was feeling, threatened her that she could be fired for no call/no show. After checking with human resources, however, Ms.

---

[8] We note that in her own motion for summary judgment, Schaar has argued that there is direct evidence that Lehigh Valley's decision to terminate her was motivated by the taking of leave. Under the Price Waterhouse framework, when an FMLA plaintiff alleging unlawful termination presents 'direct evidence' that her FMLA leave was a substantial factor in the decision to fire her, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered the FMLA leave. Price Waterhouse v. Hopkins, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989); Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).

As evidenced by our Order dated July 29, 2010, Plaintiff's summary judgment motion was denied by this Court because material issues of fact existed as to Schaar's FMLA eligibility. Schaar's assertion that Price Waterhouse applied was not analyzed. This Court, however, finds it interesting to note that in their response, Lehigh Valley stated that even if there was direct evidence that it retaliated against Schaar for taking FMLA leave or invoking her rights, this was a genuine issue of material fact exists whether Lehigh Valley would have terminated Schaar anyway given her repeated incompetence and violation of their call-out policy.

15

Chromczak found out that she could not fire Schaar for her absence. Ms. Chromczak nevertheless terminated Schaar on October 3, 2005, six days after Schaar had returned from her absence. While the reasons listed on the discharge notification do include a few work performance issues, the notification also specifically lists Schaar's absence as a reason for termination despite Ms. Chromczak's confirmation from human resources that she could not terminate Schaar for her recent absence.

Moreover, we note that in response to Schaar's motion for summary judgment, Lehigh Valley advises that the reasons surrounding Schaar's termination are hotly disputed. In fact, Lehigh Valley concedes that a genuine issue of material fact exists whether they would have terminated Schaar given her "repeated incompetence and violation" of their call out policy. Based primarily on these reasons, we decline to grant summary judgment to Lehigh Valley on Schaar's discrimination/retaliation claim under the FMLA.

An Order follows.